UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

J & L LIQUOR, INC.     Case No. 16-10717

   Plaintiff,     Stephanie Dawkins Davis
v.         United States Magistrate Judge

UNITED STATES OF AMERICA,

   Defendant.
_____/

**OPINION AND ORDER RE:**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 15)**

**I. PROCEDURAL HISTORY**

 A. <u>Proceedings in this Court</u>

On February 29, 2016, plaintiff filed the instant suit seeking judicial review

of the USDA's Food and Nutrition Service (FNS) determination that plaintiff

trafficked in Supplemental Nutrition Assistance Program (SNAP, known

colloquially as the food stamp program), and to review the decision to

permanently disqualify plaintiff from participation in the program. (Dkt. 1). With

consent of the parties, this case was referred to the undersigned for final judgment

in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.

(Dkt. 12). This matter is before the Court on defendant's motion for summary

judgment. (Dkt. 15). Plaintiff also filed a response brief in opposition to

defendant's motion. (Dkt. 18). Defendant filed a reply brief in further support of its motion. (Dkt. 19). The Court has reviewed the pleadings, and has heard oral argument from the parties at a hearing held on May 2, 2017.

B.    Administrative Proceedings

On June 9, 2015, the FNS issued a letter to plaintiff charging it with trafficking in SNAP benefits.[1] (Dkt. 14, PgID 180-182). The letter was the culmination of an investigation triggered by the FNS's computerized ALERT system identifying suspicious benefit redemption patterns at the retail convenience store operated by plaintiff in 2014, which included a visit to the store and a manual analysis of redemption data. (Dkt. 14, PgID 148-179, 223-232). The charge letter advised plaintiff that the penalty for SNAP trafficking is permanent disqualification from SNAP, but that plaintiff could request a civil monetary penalty in lieu of permanent disqualification by submitting certain documentation as set forth in 7 C.F.R. §278.6 within ten days of its receipt of the charge letter. (Dkt. 14, PgID 180-182). Plaintiff disputed the trafficking charge, and did not request a civil monetary penalty in lieu of permanent disqualification. (Dkt. 14, PgID 197-208).

---

[1]Trafficking is the term for a number of fraudulent schemes including buying, selling, stealing, or otherwise effecting an exchange of SNAP benefits issued and accessed via Electronic Benefit Transfer (EBT) cards for cash or consideration other than eligible food. 7 C.F.R. §271.2.

On July 23, 2015, FNS permanently disqualified plaintiff from participating in SNAP and sent a letter to plaintiff advising it of that determination. (Dkt. 14, PgID 237-238). The July 23, 2015 FNS letter also advised plaintiff of its right to review by the Administrative Review Branch, and plaintiff submitted its request for such a review on July 29, 2015. (Dkt. 14, PgID 237-243). FNS granted plaintiff's timely request for Administrative Review of the adverse action taken against plaintiff. (Dkt. 14, PgID 310-311). On or about February 2, 2016, the administrative review officer issued a Final Agency Decision upholding the permanent disqualification of plaintiff from SNAP participation. (Dkt. 14, PgID 391-418). The Final Agency Decision advised plaintiff of its right to judicial review pursuant to 7 U.S.C. §2023 and 7 C.F.R. §279.7. (Dkt. 14, PgID 417). Plaintiff timely commenced the present action for judicial review. (Dkt.1). The defendant filed a motion for summary judgment, which is now ripe for determination by the Court. (Dkt. 15, 18, 19).

## II.     FACTUAL BACKGROUND AND PARTIES ARGUMENTS

### A.     Factual Background

Plaintiff J & L Liquor, Inc. owns and operates a retail market in Highland Park, Michigan known as J & L Market. (Dkt. 1, ¶2-3, 8). In March 2013, FNS authorized plaintiff to accept SNAP benefits as payment for eligible food items. (Dkt. 14, PgID 223). Plaintiff market carries an assortment of food products,

including, but not limited to, a deli counter offering meats and cheeses, eggs, baby food and formula, bread, milk, juices, soft drinks and snack foods, as well as non-food items such as tobacco products, liquor and lottery tickets. (Dkt. 14, PgID 148-167). FNS's computerized fraud detection system identified suspicious benefit redemption patterns at plaintiff's store, which triggered a manual analysis of redemption data for plaintiff's store for the months of September through December 2014. (Dkt. 14, PgID 168- 179). FNS also conducted an on-site visit in order to observe the store, complete a survey and take photographs of the premises in November 2014. (Dkt. 14, PgID 146-167). FNS's manual analysis of benefit redemption data revealed average transaction dollar amount, average transaction dollar volume and total purchase count significantly higher than comparable retail outlets, as well as multiple transactions from the same benefit accounts within an unusually short period of time. FNS deemed 22 groups of 2 to 4 rapid transactions suspicious as they are unusual and suggestive of trafficking. (Dkt. 14, PgID 183-232). The FNS investigator concluded that the data from September through December 2014 established clear and repetitive patterns of unusual, irregular and inexplicable SNAP activity warranting the issuance of a trafficking charge letter. (Dkt. 14, PgID 232).

Plaintiff responded to the charge letter by arguing that the suspect repetitive transactions were sometimes separated by more than 24 hours, and thus did not

lead to a reasonable inference that plaintiff violated SNAP regulations. Plaintiff

argued that the demographics of its customer population provided legitimate

explanations for the irregular redemption data. (Dkt. 14, PgID 197-200).

Specifically, plaintiff suggests that Highland Park is a poor community, under-

served by large chain supermarkets which leads its residents to rely on small

markets like plaintiff for grocery staples. Additionally, plaintiff asserted that the

citizens in the community lack access to transportation, thereby requiring

customers to make repeated trips on foot to satisfy their shopping needs. Plaintiff

reasons that these circumstances explain the frequent, repeated transactions on the

same benefit account and also supports the legitimacy of the larger than average

transactions. (*Id.*) Plaintiff maintains that it is not uncommon for its customers to

do all of their grocery shopping at a store like J & L. (Dkt. 14, PgID 411).

Plaintiff also disputed the characterization of the 491 identified transactions

as excessively large because nearly 40% of them were for $40 or less, and only 14

of them exceeded $100. (Dkt. 14, PgID 197-200). Plaintiff repeatedly argued to

FNS that its own "analysis of the transactions demonstrates that the store did not

engage in any violations." (Dkt. 14, PgID 242). Plaintiff also asserts that it

conducted its own investigation into the transactions and found no SNAP

violations, and that FNS's speculative findings were specious. (Dkt. 14, PgID

411). Plaintiff supplied photographs of the store's interior, including shelves of a

variety of grocery and other food items. (*Id.*). One photograph shows a sign

advertising large packages of frozen chicken wings for $37.99, packages of frozen

fish for $22.99, as well as for spare ribs, baby back ribs and frozen potato wedges.

(Dkt. 14, PgID 219).

The Final Agency Decision addressed plaintiff's responses by noting that its

on-site investigation revealed a substantial inventory of prepared, ready-to-eat

foods and accessory food items, as well as beer, wine and liquor, household items,

paper products, cleaning supplies, laundry detergent, health and beauty products,

and lottery tickets. "Store visit photos reflected that canned/packaged items were

dusty, and staple food shelves were sparsely stocked, indicating a low turnover."

(Dkt. 14, PgID 412). The store offered no fresh meat, fish or poultry, other than

cold cuts; and no fresh vegetables or fruit was in inventory aside from two bags of

onions, three tomatoes and one bunch of bananas. (*Id.*).

Additionally, at the time of the on-site investigation, there was one shopping

cart present, and it contained merchandise for sale. There was one hand-held

shopping basket available. There were two cash registers situated behind a

Plexiglass barrier. There was no check-out counter or conveyor belt; purchased

items had to be handed through 8"x18" openings in the Plexiglass. (*Id.*). "The

majority of SNAP-eligible food items on hand consisted of snack foods and soft

drinks. There was no indication of advertised specials/promotions or

bulk/expensive food items." (*Id.*)  The FNS administrative review officer

questioned how, without any available shopping carts, only one shopping basket

and little to no checkout space, customers were able to gather and transport large

orders of inexpensive snack food to the cash registers and waiting transportation.

FNS also refuted plaintiff's assertion that its customers had no access to

better-stocked outlets in the area by noting that plaintiff's customers who were

documented to have conducted implausible transactions with plaintiff were

shopping at super stores, supermarkets and grocery stores - stores which likely

offered better stock with more competitive prices than plaintiff, at or near the same

time of the suspicious transactions.  (Dkt. 14, PgID 413).  Specifically, FNS notes

that at the time of the charge letter, there were 89 SNAP-authorized stores within a

two-mile radius of plaintiff, including four super stores, three supermarkets, four

medium grocery stores, four small grocery stores and 74 other convenience stores,

and that the customers engaging in the suspicious transactions with plaintiff were

doing so only or primarily at plaintiff's store.  (Dkt. 14, PgID 415).

FNS further noted that 428 excessively large transactions identified in its

investigation were at least 300% greater than the average SNAP transaction for

retail outlets comparable to plaintiff's.[2]   (Dkt. 14, PgID 413).  Given plaintiff's

---

[2]The average SNAP transaction amount for convenience stores such as
plaintiff is $6.08. (Dkt. 14, PgID 412).

inventory and lack of infrastructure for large orders, these excessively large transactions were indicative of trafficking, absent compelling evidence to the contrary.  (*Id.*).

The administrative review officer also concluded that, contrary to plaintiff's argument, the burning of a nearby market did not account for increased transaction activity for plaintiff because that market had been withdrawn from the SNAP program in March 2014, the same month plaintiff's store began SNAP participation.  Additionally, a comparison of the survey documents from March and November 2014 revealed that plaintiff had a superior stock of staple food items, fruits and vegetables, and meat, poultry and fish in March, and that plaintiff store had eight shopping carts available during the earlier survey.  (Dkt. 14, PgID 414).

The administrative review officer also noted that the undated photograph submitted by plaintiff of a sign advertising the higher-cost chicken wings, frozen fish and ribs was not present during either of the site visits.  Moreover, the notation that common staple frozen unprepared items in one particular area were SNAP EBT eligible suggests the sign was created in response to the charge letter to support plaintiff's justifications of the suspicious redemption activity. (*Id.*). The administrative review officer also observed that repetitive and excessively large transactions declined precipitously after plaintiff received the charge letter,

dropping by 87% in June and by 65% in July. (Dkt. 14, PgID 416).

Since the commencement of this action for judicial review, defendant deposed Ihab Sitto, owner of plaintiff, and his wife, Karen Sitto. (Dkt. 15). At his deposition, Mr. Sitto testified that he did not dispute the underlying redemption transaction data of the FNS investigation; rather he disagreed with the inferences of trafficking the FNS drew from that data. (Dkt. 15-1, PgID 460). Mr. Sitto testified that plaintiff did not track individual customer's transactions so he could not examine or contest what was purchased in any given transaction. (*Id*. at PgID 465).

B.    Defendant's Motion

Defendant argues that, although plaintiff is entitled to a *de novo* review of the adverse administrative action, it bears the burden of proof to show by a preponderance of the evidence, that the violations did not occur. (Dkt. 15, PgID 438-439). Additionally, to survive a motion for summary judgment, plaintiff must cite to particular parts of materials in the record, including depositions, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials to show that the materials cited fail to demonstrate the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. According to defendant, mere denials, without citations to evidence, are insufficient to avoid

9

summary judgment.

Defendant argues that the Food Stamp Act expressly provides that disqualification from SNAP may be based on facts established through on-site investigations, inconsistent redemption data, or evidence established through a transaction report under an electronic benefit transfer system. Defendant asserts that it is well established that a retailer can be permanently disqualified for trafficking based on EBT data.

Here, defendant insists that the Final Agency Decision is the result of close and careful analysis of EBT data. The administrative review officer considered each of plaintiff's arguments and sustained the FNS findings of violations and the decision to permanently disqualify plaintiff from SNAP participation. As such, the burden falls to plaintiff to demonstrate that the Final Agency Decision is in error by putting forth evidence adequately explaining each and every set of suspicious transactions. (Dkt. 15. PgID 446). Defendant notes that plaintiff's owner testified that he cannot provide any evidence to counter the suspicious transactions identified by FNS. Mr. Sitto testified that there is no way to examine the individual transactions of his customers to identify what items were part of a particular transaction. Defendant maintains that alternative explanations offered by plaintiff were not supported, and, in fact, were repudiated by the evidence and, as such amount to mere denials which cannot impede summary judgment and

cannot serve to satisfy plaintiff's burden of proof that it did not violate SNAP regulations.

Defendant also maintains that, contrary to plaintiff's argument, the penalty imposed by the FNS was proper. Permanent disqualification from the program is the penalty imposed by statute unless a retailer makes a timely request for a civil monetary penalty and submits evidence of compliance with the criteria for that penalty. Plaintiff did not make a timely request for such a penalty. Additionally, defendant asserts that the penalty determination may only be overturned on judicial review if it is deemed arbitrary and capricious, or unwarranted in law or without justification in fact. Defendant urges that the FNS penalty of permanent disqualification be upheld.

Finally, defendant argues that plaintiff has failed to state a claim for either substantive or procedural due process. Defendant argues that the SNAP anti-fraud regulations do not transgress any fundamental liberties and that there is a rational basis for these regulations and procedures. Therefore, there is no viable claim for substantive due process violation.

A procedural due process violation claim fails because the administrative process and *de novo* judicial review gives plaintiff notice and an opportunity to be heard in a meaningful time and manner as a matter of law. Defendant points out that the SNAP regulations and procedures have been repeatedly held to provide

due process, and thus plaintiff's claim for relief on these grounds should be rejected. (Dkt. 15, PgID 451).

### C. Plaintiff's Opposition

Plaintiff nevertheless argues that genuine disputes of material fact exist to defeat defendant's motion. (Dkt. 18). Plaintiff points out that it is defendant's burden to show that there is no genuine dispute as to any material fact and that the court must view all evidence along with reasonable inferences therefrom in the light most favorable to plaintiff. Plaintiff argues he must merely demonstrate through affidavits or other evidence that there are genuine issues of material fact. According to plaintiff, the court's function is not to weigh the evidence or make a credibility determination, but rather to determine whether the evidence when viewed in a light most favorable to plaintiff and making all reasonable inferences in that party's favor, creates a dispute of fact over which reasonable minds could differ. Moreover, plaintiff argues that even where material facts are undisputed, if a fact-finder could draw different conclusions from those facts, summary judgment is not appropriate. Plaintiff argues that since the Court's review of an adverse administrative decision is *de novo,* the court is to reach its own factual and legal conclusions and is not limited to the matters considered at the administrative proceedings.

Under this framework, plaintiff argues that the statistical data relied upon by

the defendant does not support its conclusion that plaintiff engaged in trafficking. Specifically, Ihab Sitto, plaintiff's owner, testified that the 63 multiple transactions made in unusually short time frames on the same benefit accounts were not acts of trafficking. Plaintiff argues that these multiple transactions were not necessarily made by the same individual, that many of these identified transactions were separated by at least 24 hours and that all but one of these transactions was less than $100 in value. According to Sitto he had no way of knowing if individuals using the same account were members of the same household, nor could he reasonably refuse a transaction just because another transaction had occurred the previous day. Plaintiff argues that the court cannot infer that transactions from members of the same household taking place within 24 hours of each other must have involved trafficking. Rather, the fact-finder must determine the proper inference, if any, to be drawn from the statistical data. (Dkt. 18, PgID 483-487).

Plaintiff also argues that the transactions identified as excessively large at the administrative proceedings do not support an inference of trafficking because the retail outlets to which they are being compared for average transaction amounts, are not comparable to plaintiff. Plaintiff challenges the defendant's decision to group it with outlets such as gas stations and 7-11 stores. In support, plaintiff cites Mr. Sitto's affidavit and photographs showing the large supply of fresh food products and other SNAP eligible products available in its aisles,

coolers and freezers.

To further distinguish plaintiff's market from a convenience store, and support its contention that the size of the transactions were not excessively large, plaintiff emphasizes the photograph of the sign advertising large packages of chicken wings for $37.99 and frozen fish for $22.99. Plaintiff argues that the high price of these bulk items explains the size of the suspicious transactions. Mr. Sitto again testified that these large transactions may have reflected a household doing its principal shopping at the plaintiff store or a household preparing to host a celebration, rather than trafficking. (Dkt. 18, PgID 487-490). Consequently, plaintiff argues that summary judgment is not proper because reasonable minds could differ as to which inferences can be made from the statistical redemption data.[3]

D.    Defendant's Reply

Defendant reiterates that plaintiff bears the burden of proving by the preponderance of the evidence that SNAP violations did not occur. Further, multiple courts have held that mere denials (via affidavit or deposition testimony) that violations occurred are not sufficient to rebut the Government's evidence in a SNAP disqualification action. Thus, plaintiff's general denial is insufficient to

---

[3]Plaintiff does not offer any opposition to defendant's arguments on the appropriateness of the penalty or on plaintiff's due process violation claims.

create a genuine issue of material fact or meet plaintiff's burden of proof that trafficking did not occur so as to defeat defendant's motion for summary judgment. (Dkt. 19, PgID 531).

Defendant argues that if the store owner fails to meet its burden and fails to demonstrate a material dispute of fact as to the existence of program violations, summary judgment may be granted in favor of the government. Defendant asserts that a retailer cannot carry its burden of proof by surmising what its customers may or may not be doing or by making unreasonable and impractical speculations to explain away irregular, suspicious transactions. Defendant contends that courts confronted with similar circumstances have routinely granted summary judgment in favor of the government. (Dkt. 19, PgID 534). Additionally, defendant argues that plaintiff must account for all of the suspicious activity by raising material issues of fact as to each of the transactions set forth as suspicious in order to avoid summary judgment. Plaintiff's general denial falls far short of this requirement. Accordingly, defendant maintains that summary judgment in its favor is appropriate.

## III. DISCUSSION

### A. Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *McClain's Mkt. v. United States*, 411 F. Supp. 2d 772, 776 (N.D. Ohio 2005), aff'd, 214 Fed. Appx. 502 (6th Cir. 2006)(citing *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir.1995)). Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*(citing *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir.1995)). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Id*. When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Rather, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586-87 (1986).

"The familiar principles governing the resolution of summary judgment motions are affected somewhat by the statutory provision governing challenges to FNS disqualification decisions." *Hanna v. United States*, 2007 WL 1016988, at *3–4 (E.D. Mich. Mar. 30, 2007). As the parties correctly note, this Court must

conduct a "trial de novo" on plaintiff's challenge to the adverse administrative action, to determine the validity of the questioned administrative action at issue. *Id*.; 7 U.S.C. § 2023(a) (15). Indeed, this Food Stamp Act provision mandates that a district court "make its own findings based upon a preponderance of the evidence and not limit itself to matters considered in the administrative proceeding." *Warren v. United States*, 932 F.2d 582, 586 (6th Cir.1991); *see also Kahin v. United States*, 101 F.Supp.2d 1299, 1302 (S.D.Cal.2000).

Nevertheless, courts have rejected the notion that "de novo" review under §2023(a)(15) requires that a district court proceed as if no agency action had been taken. *Hanna*, 2007 WL 1016988 at *4 (quoting *Redmond v. United States*, 507 F.2d 1007, 1011 (5th Cir.1975)). The district court is not bound by the administrative record; rather the agency's decision is presumed to be valid, and must stand "unless the plaintiff proves that it should be set aside." *Redmond*, 507 F.2d at 1011-12; *see also McCray v. United States*, 511 F.Supp. 205, 209 (E.D.Mich.1981). The burden of proof in the judicial review proceeding is upon the aggrieved store to establish the invalidity of the administrative action by a preponderance of the evidence. *Hanna*, 2007 WL 1016988 at *4 (citing *Warren*, 932 F.2d at 586). Synthesizing this substantive standard with summary judgment principles, a plaintiff in a Food Stamp Program disqualification case must raise material issues of fact as to each alleged violation to survive a motion for

summary judgment. *McClain's Mkt. v. United States*, 214 Fed. Appx. 502, 505

(6th Cir. 2006)(citing *Kahin*, 101 F.Supp.2d at 1303).

Because summary judgment may be defeated only when the plaintiff

identifies a genuine factual dispute as to each alleged violation, general statements

about customers' shopping patterns or other customer practices are not enough to

create a triable issue of fact. *Tony's Pantry Mart Inc. v. United States*, 2017 WL

514184, at *5–6 (N.D. Ill. Feb. 8, 2017)(quoting *Rockland Convenience Store v.

United States*, 2011 WL 5120410, at *8 (D.N.H. Oct. 27, 2011)); *see also*

*McClain's Mkt.*, 411 F. Supp. 2d at 777(store owner's affidavit, which was not

supported by any other evidence, presented no explanation of any of the 149

transactions asserted against plaintiff, but merely asserted general justifications for

large expenditures and was thus insufficient to survive summary judgment); *AJS*

*Petroleum, Inc. v. United States*, 2012 WL 683538, at *6 (D. Md. Mar. 1, 2012)

("in attempting to refute the Government's fact-based data, [plaintiff] offers only

generalized, hypothetical explanations about its sales and business operations

during the investigation period," and thus plaintiff "has fallen far short of the

specificity required to defeat summary judgment."). Moreover, factually

unsupported arguments do not create a genuine dispute about the legitimacy of the

irregular EBT transactions. *Duchimaza v. United States*, 211 F.Supp.3d 421

(D.Conn. 2016)(Plaintiffs cite no examples, provide no data, and do not even

attempt to account for the specific transactions the FNS identified. In other words, the Plaintiffs' evidence does not suggest that the Defendant's determination was invalid).

### B. Analysis

In this case, plaintiff has attempted to discredit FNS's findings of SNAP violations by offering generalized, hypothetical explanations for the suspicious redemption activity the FNS deemed trafficking. For instance, to support its argument that alternative inferences may be drawn from the undisputed statistical data relied upon by FNS, plaintiff relies solely on the affidavit of its owner, Ihab Sitto. (Dkt. 18-2). As discussed in detail by the cases cited above, such unsubstantiated conjecture is insufficient to create a genuine issue of material fact that would preclude summary judgment. Plaintiff's general hypotheses to explain the multiple transactions in short time frames and the excessively large transactions cite no specific examples, provide no data, and do not attempt to account for the specific transactions identified by FNS. They are thus insufficient to refute the government's fact-based data, and fail to meet the specificity required to defeat summary judgment. *See Tom's Pantry Mart, Inc.*, 2017 WL 514184, at *5-6; *Duchimaza,* 211 F.Supp.3d at 421; *AJS Petroleum, Inc.,* 2012 WL 683538, at *6; *McClain's Mkt.,* 411 F.Supp.2d at 777.

Likewise, Mr. Sitto's conclusory denials of trafficking, unsupported by any

demonstrative evidence[4], cannot withstand summary judgment. *See, e.g., 109 Merrick Deli Corp. v. United States*, 2014 WL 6891944, at *4 (E.D.N.Y. Sept. 30, 2014) (the store's "conclusory assertions and speculative alternative explanations for the evidence in the record does not create a genuine issue as to any material fact."); *see also, Hanna,* 2007 WL 1016988 at *4. Because Plaintiff has failed to present specific evidence raising a genuine dispute for trial in relation to the suspicious activity, the Court agrees that summary judgment is appropriate under Rule 56.

For the reasons set forth above, defendant's motion for summary judgment is **GRANTED** and plaintiff's complaint is **DISMISSED WITH PREJUDICE**.

Date: September 28, 2017     <u>s/Stephanie Dawkins Davis</u>
                            Stephanie Dawkins Davis
                            United States Magistrate Judge

---

[4]Plaintiff also relies upon an undated photograph of a sign posted in the store advertising large bags of chicken wings for $37.99 and frozen fish for $22.99 as part of its alternate explanation for the excessively large transactions. This undated photograph of a sign not present during either of the FNS on-site visits to the store does not support plaintiff's conclusory speculation that these high-priced offerings account for the large transactions. Plaintiff offers no evidence that any of the identified large transactions include purchases of these items. *See Duchimaza*, 211 F.Supp.3d. at 421; *McClain's Mkt.,*411 F.Supp.2d at 777.

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 28, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to counsel of record.

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov